IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2061-F

| | | |
|---|---|---|
| GERALD BRYANT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ROBERT HINES, | ) | |
| | ) | |
| Respondent. | ) | |

Gerald Bryant, a state prisoner proceeding *pro se*, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Robert Hines filed a motion to dismiss [D.E. # 8] the petition as untimely pursuant to the statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Petitioner has filed a response [D.E. # 11] in opposition to the motion. For the following reasons, the court grants respondent's motion to dismiss.

## STATEMENT OF THE CASE

On November 27, 1979, in the Superior Court of Wayne County, petitioner was convicted based upon his plea of guilty to charges of second degree kidnaping and armed robbery. Pet. 1. He was sentenced to life plus thirty years in prison. Id. Petitioner did not appeal his convictions or sentence. Id. at 2. Petitioner filed numerous pro se motions for appropriate relief ("MAR") in the state courts, beginning in 2003. Id. at 3-4; Resp.'s Supp. Mem. [D.E. # 9] 1-2. Each of these motions were denied and petitioner's subsequent petitions for certiorari review in the North Carolina Court of Appeals were likewise denied. Id.

Petitioner filed this *pro se* petition for writ of habeas corpus, at the earliest, on February 29, 2012. On April 3, 2012, respondent filed his motion to dismiss, arguing that the petition was filed outside of the statute of limitations, and is therefore time-barred. Petitioner filed his response on April 17, 2012.

## DISCUSSION

I.   Petitioner's Claims

The petition presents the following two claims for relief: (1) "A proportionality review should be conducted in contrast to similarly situated defendants' sentences today. 8th Amendment"; and (2) "My sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment." Pet. 5-6. The crux of petitioner's claims is that, due to changes in North Carolina sentencing law in 1994, persons convicted of the same offenses as he are no longer eligible to receive a life sentence. He argues that he has "spent at least five (5) times as much time in prison that similarly situated people under today's law. My sentence should mirror the sentences given to offenders today." Id. at 5. He also asserts that his sentence is "cruel and unusual" because he is serving a life sentence "for a non-homicide crime committed in 1979 which carries only 5 years now." Id. at 6.

II.  Applicable Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a state court must file a petition for a writ of habeas corpus within one year of one of four applicable triggering events. 28 U.S.C. § 2244 (d)(1). The limitation period begins to run from the latest of:

(A)   the date on which the judgment became final by the conclusion of direct

2

>review or the expiration of the time for seeking such review;
>
>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. Pursuant to § 2244(d)(2), the limitations period may be tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." An application for post-conviction review is pending from "initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review) . . . ." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).

The AEDPA's statute of limitations is subject to equitable tolling if the petitioner can establish "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, _ U.S. _, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (emphasis deleted)). Petitioner's conviction became final for purposes of § 2244(d)(1)(A) "upon the conclusion of direct review or the expiration of the time for seeking such review." However, "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent

responses to claims of hardship, and subjective notions of fair accommodation." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Hence, equitable tolling of the habeas statute of limitations should be allowed only in those "rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008).

III. Application

Respondent asserts that the timeliness of the petition is governed by § 2244(d)(1)(A), which allows one year from the date the conviction becomes final. Resp.'s Supp. Mem. [D.E. # 9] 2-3. Petitioner argues, however, that the petition is timely pursuant to either § 2244(d)(1)(C) or (D), which require that the petition be filed within one year of the date on which the Supreme Court newly recognizes a constitutional right which it makes retroactively applicable to cases on collateral review, or within one year of the date on which the factual predicate supporting the claim asserted could have been discovered with due diligence. See Pet'r's Resp. [D. E # 11-1] 3-6. The court agrees with Respondent that § 2244(d)(1)(A) governs the timeliness of the petition.

The court first addresses petitioner's interpretation of the alternative provisions of § 2244(d)(1). Petitioner asserts that his petition is timely pursuant to § 2244(d)(1)(C) because it was filed within one year of the date on which the Supreme Court decided Graham v. Florida, 130 S.Ct. 2011 (2010). Pet'r's Resp. 5. However, because Graham has no relevance in plaintiff's case, he is not asserting any "right" recognized by that decision. In Graham, the Supreme Court described the issue before it as follows: "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." Id. at 2017-18. Graham was a juvenile who was charged as an adult and pled guilty to, *inter alia*, a count of "armed burglary with assault or

4

battery," a felony carrying a maximum sentence of life without parole under Florida law. Id. at 2018. The trial court withheld adjudication of the guilty plea and imposed a three year term of probation. Id. Less than six months later, Graham was again arrested after his alleged involvement in several additional crimes. Id. at 2019. He was charged with violating the terms of his prior probation and subsequently adjudicated as a probation violator. Id. The trial court then imposed judgment on the prior charge to which Graham had pled guilty and sentenced him to life imprisonment. Id. at 2020. Ultimately, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." Id. at 2034.

Petitioner does not argue that he was a juvenile at the time he committed the offenses described in the petition. Thus, by its own terms, the holding of Graham simply has no bearing on petitioner's case and, therefore, the issuance of that decision cannot serve as a triggering event for purposes of § 2244(d)(1)(C). A closer examination of Graham forecloses petitioner's argument. The Court in Graham was very careful to distinguish the matter before it, which involved "a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes" from separate Eighth Amendment cases which concerned "a gross proportionality challenge to a particular defendant's sentence." Id. at 2022-23. See also id. at 2021 ("The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty."). In other words, the court was concerned with whether a whole

5

class of offenders–juveniles–could constitutionally be sentenced to life imprisonment for nonhomicide crimes. The court was not concerned with whether life imprisonment is a grossly disproportionate sentence for the crime for which Graham was convicted. Petitioner's case clearly falls in this latter category of cases because he challenges his sentence as grossly disproportionate to his crime in light of subsequent changes in North Carolina sentencing law. He does not contend that he is within a class of offenders who could not receive his sentence for his crime, a class which is so far expressly limited, by Graham, to juveniles.

Graham further makes clear that the Eighth Amendment "right" which petitioner is actually asserting, that a sentence must in some sense be proportional to the crime, has been recognized for at least a hundred years prior to Graham. See id. at 2021 (quoting Weems v. United States, 217 U.S. 349, 367 (1910) ("The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'"). See also id. (quoting Harmelin v. Michigan, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in judgment)) ("the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime."). The Eighth Amendment inquiry germane to these types of cases is simply whether, "given all the circumstances in a particular case," "the sentence is unconstitutionally excessive." Id. Because this necessarily requires a fact-intensive, case-by-case approach, the Supreme Court has produced numerous decisions over the years both upholding and invalidating on proportionality grounds sentences imposed for various crimes. See id. at 2011-22 (citations omitted) (discussing cases in which the Court invalidated a life sentence for a "passing a

6

worthless check," upheld a life sentence for "possessing a large quantity of cocaine," rejected a twenty-five year "three strikes" sentence for "theft of a few golf clubs," and upheld a life sentence "for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses"). Ultimately, the court need not determine whether petitioner's sentence violates the Eighth Amendment pursuant to the principles espoused in these cases. It is sufficient for present purposes to conclude that the "right" petitioner invokes with his claim was not "newly recognized" in Graham and, in fact, has long been recognized by the Supreme Court. Accordingly, the petition is not timely pursuant to § 2244(d)(1)(C).

Petitioner also appears to assert that the petition is timely pursuant to § 2244(d)(1)(D), which allows a petitioner to file his habeas corpus petition within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner appears to premise this argument on his belief that "his right to challenge his sentence because it was cruel and unusual did not arise until 2010." Pet'r's Resp. [D.E. # 11-1] 2. The only relevant 2010 event described in the petition was the Supreme Court's decision in Graham. However, as set forth above, petitioner's "right" to challenge his sentence on proportionality grounds is in no way dependent on Graham and, in fact, has been recognized by the Supreme Court for over a hundred years. As respondent asserts, the "factual predicate" of petitioner's claim, if any, is the change in North Carolina sentencing law which took effect in 1994. See Resp.'s Supp. Mem. [D.E. # 9] 3. At that time, petitioner knew or should have known all of the facts necessary to present his present claim that his life sentence is disproportionate to purportedly similarly situated offenders sentenced under the new law. Although petitioner appears to argue that his ignorance of the law and lack of access to legal resources compels a finding that he could not

7

have discovered this "factual predicate" "through the exercise of due diligence," it is clear that he was aware of the 1994 change in North Carolina's sentencing law by 2003, at the latest. See Pet'r's 12/29/2003 MAR, ex. 4 to Resp.'s Supp. Mem. [D.E. # 9-5] (arguing that "the change from the 1981 Fair Sentencing Act to the 1994 Structured Sentencing Act is quite substantive and that the new legal standard should be retroactively applied to petitioner's sentence."). That petitioner knew of the only viable so-called "factual predicate" of his claim in 2003, at the latest, yet did not file his federal habeas petition until 2012, defeats even his own convoluted argument that the petition is timely pursuant to § 2244(d)(1)(D).

Given that both § 2244(d)(1)(C) and (D) are inapplicable, there is no basis for assessing the timeliness of the petition for AEDPA purposes other than the finality of petitioner's conviction pursuant to § 2244(d)(1)(A). Petitioner admits in the petition that he was convicted as a result of his guilty plea and sentenced in state court on November 27, 1979, that he did not file a direct appeal, and that he did not file a state post-conviction MAR until December 30, 2003. Pet. 1-3. Thus, because petitioner did not file a direct appeal of his conviction, the conviction became final when the time during which he could have filed such an appeal expired in 1979. See Jimenez v. Quarterman, 555 U.S. 113, 119 (2009). Because petitioner's conviction therefore became final prior to April 24, 1996, the effective date of AEDPA, he had until April 23, 1997, to timely file a federal habeas corpus action challenging his 1979 conviction and sentence. Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998). Because petitioner did not file a collateral state post-conviction challenge to this conviction until 2003, the running of the limitations period was not statutorily tolled prior to its expiration. Thus, the petition is untimely and is due to be dismissed unless petitioner is entitled to equitable tolling of the limitations period.

8

Petitioner presents a brief argument which arguably could be construed as a request for equitable tolling based on his purported ignorance of the AEDPA's limitations period. Petitioner asserts as follows:

> At the time Petitioner was sentenced, there was access to law libraries. On or about 1990, the libraries were closed. It is safe to say there was no way the libraries had materials on the AEDPA. . . .
>
> Conversely, had the state elected to keep the libraries rather than creating North Carolina Prisoner Legal Services, it would be correct to infer that a prisoner did not exercise due diligence because the prisoners would have been in a position to know about the upcoming AEDPA.
>
> However, North Carolina prisoners incarcerated prior to 1989 were forced to rely on North Carolina Prisoner Legal Services, whom never informed pre-Fair Sentencing Act prisoners that the AEDPA applied to them. Under this extraordinary circumstance, petitioner requests an evidentiary hearing.

Pet'r's Resp. 5. To the extent this indeed is intended as a plea for equitable tolling, it is unavailing. First, petitioner's characterization of himself as ignorant of the AEDPA, even if credited as true, does not warrant equitable tolling. Courts have long recognized that, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). The Fourth Circuit has reaffirmed this principle even after Holland. See United States v. Oriakhi, 394 F. App'x 976, 977 (4th Cir. 2010) (unpublished decision) (remarking that "unfamiliarity with the legal process or ignorance of the law cannot support equitable tolling"). While a lack of access to legal materials may, in certain extraordinary circumstances, warrant equitable tolling, no such extraordinary circumstance exists in this case. North Carolina's decision to utilize North Carolina Prisoner Legal Services in lieu of providing prison libraries at all of its correctional facilities is hardly an extraordinary circumstance unique to petitioner, and it does not prevent the filing of numerous timely habeas corpus petitions in this

9

District every year. Moreover, by petitioner's own admission, he had access to North Carolina Prisoner Legal Services ("NCPLS") for any required legal assistance since 1990, yet he did not file the instant petition until March of 2012. Pet'r's Supp. Mem. 5. While petitioner faults NCPLS for failing to inform him that the AEDPA applied to him, he points to no effort on his part to educate himself on any available post-conviction remedies or the applicability of the AEDPA to him. Given the general prohibition on ignorance of the law as a basis for equitable tolling, petitioner cannot satisfy the requirement that he exercise diligence simply by complaining about the purported failure of others to inform him of the law without showing that he undertook some positive effort to obtain information yet was prevented from doing so. Thus, petitioner has not shown that he has diligently pursued his right to file a federal habeas corpus petition, or that some extraordinary circumstance has prevented him from timely filing his petition. Accordingly, petitioner is not entitled to equitable tolling and respondents' motion for summary judgment is due to be granted and the petition dismissed.

IV.     Certificate of Appealability

The court must now consider whether petitioner is entitled to a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise

10

Case 5:12-hc-02061-F   Document 12   Filed 02/04/13   Page 10 of 11

is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the petition in light of the applicable standards, the court finds that reasonable jurists would not find the court's treatment of the petition debatable or wrong and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the reasons stated above, respondent's motion to dismiss [D.E. # 8] the petition as untimely is GRANTED and the petition is DISMISSED. The court DENIES a certificate of appealability. The clerk of court is DIRECTED to close this case.

SO ORDERED. This the 4th day of February, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge